Rockingham,
No. 4581.

STATE *v.* 6.0 ACRES OF LAND.

Argued November 5, 1957.

Decided February 19, 1958.

*Louis C. Wyman*, Attorney General, and *Warren E. Waters*, Deputy Attorney General (*Mr. Waters* orally), for the State.

*George R. Scammon* (by brief and orally), for the claimants Marcus and Marie A. J. Marty.

PER CURIAM. The issue before the court is simply that of whether any errors of law are apparent upon the face of the record. *Racine* v. *Armstrong*, 100 N. H. 96. The rule for apportionment of accretion between adjoining riparian owners which was employed by the master in reaching his conclusions is one which has long been established both in this jurisdiction and elsewhere. *Batchelder* v. *Keniston*, 51 N. H. 496; *Watson* v. *Horne*, 64 N. H. 416. See *State* v. *Stafford Company*, 99 N. H. 92, 100; III American Law of Property, s. 15.31, p. 867; 5A Thompson on Real Property (1957 Replacement) s. 2560, p. 610. As briefly stated in *Batchelder* v. *Keniston, supra*, 498, the rule is applied as follows: "Give to each owner a share of the new shore line in proportion to what he held in the old shore line . . . and then the division of the land would be completed by running a line from the bound between the parties on the old river bank to the point thus determined on the newly formed shore . . . ."

As was pointed out in *Watson* v. *Horne, supra*, 418: "When the general course of the shore approximates a straight line, the division is made among the proprietors by lines perpendicular to the general course of the original bank or of the original mark of the shore." But when "it curves or bends the general rule is to . . . divide . . . the newly formed water line" according to the rule described in *Batchelder* v. *Keniston, supra*. See *State* v. *Stafford Company*, 99 N. H. 92, 100. "The dividing lines across the alluvion

are commonly laid down by connecting the extremities of the upland sides at the old shore with the point of division on the new shore as fixed by proportion." Skelton, Boundaries and Adjacent Properties (1930) 338, 339. See note, 6 Ark. L. Rev. 68. Since in this case the general course of the shore surrounding the accretion is not straight but predominantly convex, the rule of *Batchelder* v. *Keniston, supra,* was properly employed to make the division. *Watson* v. *Horne, supra.*

The fact that the accretion which formed along the claimants' property resulted in whole or in part from the artificial obstruction erected by the State does not operate to prevent acquisition of rights in the accretion by the claimants. See anno. 134 A. L. R. 467, 468-472; *Solomon* v. *Sioux City,* 243 Iowa 634, 639, 640.

It is urged on behalf of the claimants however that erection of the jetty southerly from the original high water mark toward the low water mark constituted a trespass by the State to rights of the claimants; and that the new high water mark which resulted upon completion of the jetty should be ignored in favor of the high water mark which existed prior thereto, in determining the division of the accretion between the parties. Upon this theory it is argued that the division should be made "by the extension of the easterly side line [of the claimants' property] to the low water mark." Since such an extension would virtually parallel and coincide with the westerly side of the jetty, the claimants in effect assert title to the entire tract of land by accretion involved in the proceeding.

The views thus advanced are not sustained by the findings of the master: "The master cannot find upon the evidence that the erection of the dike was a trespass by the State of New Hampshire." There was no evidence to compel a finding that it was. The right of the State to construct the jetty pursuant to the provisions of Laws 1933, *c.* 159, is thus not here in question. Nor does the circumstance that the accretion resulted from this artificial structure preclude the State from claiming the land so formed along the jetty. *Kansas* v. *Meriwether,* 182 Fed. 457; *Brundage* v. *Knox,* 279 Ill. 450, 464-467. See 4 Tiffany, Real Property (3d *ed.*) *s.* 1223; anno. 134 A. L. R., *supra,* 472; Skelton, *supra, s.* 296.

The recommendations of the master were properly approved by the Trial Court and there are no questions of law apparent upon the face of the record which disclose error.

*Exceptions overruled.*

WHEELER, J., did not sit.